# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JEREMIAH SMITH, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 04 C 7726 (01 CR 1078-3) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

In his § 2255 motion, petitioner Jeremiah Smith claims that James Tunick, his trial lawyer was ineffective because: (1) Tunick failed to file a direct appeal after Smith allegedly instructed him to do so; and (2) Tunick furnished constitutionally deficient representation in connection with his negotiation of Smith's plea agreement in light of *Apprendi v. State of New Jersey,* 530 U.S. 466 (2000). For the following reasons, Smith is not entitled to relief under § 2255.

## Background

The following facts are drawn from the record and the evidentiary hearing held on August 11, 2005. On April 18, 2003, Smith was charged in a 39-count indictment with: (1) one count of conspiracy to distribute and to possess with intent to distribute quantities of mixtures containing in excess of five kilograms of cocaine and in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1); (2) two counts of possession with intent to distribute mixtures containing cocaine in violation of 21 U.S.C. § 841(a)(1); and (3) three counts of using a communication facility (a telephone) to facilitate a narcotics transaction in violation of 21 U.S.C. § 843(b).

On March 20, 2003, Smith entered into a written plea agreement with the United States in which he pleaded guilty to conspiracy to distribute and to possess with intent to distribute quantities of mixtures containing in excess of five kilograms of cocaine and in excess of 50 grams of cocaine base, as charged in Count One of the indictment. As part of his plea agreement, Smith agreed to the following waiver contained in ¶ 11 of the plea agreement:

> Defendant understands that by pleading guilty he is waiving all of the rights set forth in the prior paragraph. Defendant's attorney has explained these rights to him, and the consequences of his waiver of those rights. Defendant further understands that he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant also understands that a defendant may appeal his sentence under certain circumstances pursuant to Title 18, United States Code, Section 3742. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation. [handwritten – Furthermore, should there be a legislative change in the sentencing guidelines pertaining to cocaine base, this waiver does not apply].

At the time of his guilty plea, the court questioned Smith at length about his understanding of the waiver in ¶ 11 of the plea agreement. During this exchange, Smith acknowledged that he could not appeal his sentence if it was under the statutory maximum. He also acknowledged the very limited circumstances under which he could bring a collateral attack.

On December 2, 2003, the court sentenced Smith to a sentence of 210 months. No notice of appeal was filed. On March 23, 2004, Smith wrote to Tunick to ask about the status of his direct appeal. As the time to file an appeal had long since passed, after Tunick received the letter, he told one of Smith's family members that it was too late to file an appeal.

On November 29, 2004, Smith filed a pro se § 2255 motion alleging that Tunick (his trial lawyer) was ineffective because: (1) Tunick failed to file a direct appeal after Smith allegedly instructed him to do so; and (2) Tunick furnished constitutionally deficient representation in connection with his negotiation of Smith's plea agreement in light of *Apprendi*.

## **Discussion**

In his § 2255 motion, Smith raises two issue. First, he contends that he asked his lawyer to file a notice of appeal and that his lawyer failed to follow his instructions. *See Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994) (a lawyer who fails to file a direct appeal at his client's request is per se ineffective regardless of the merits of the appeal). Second, Smith asserts that his waiver of his right to file a direct appeal was involuntary. For the following reasons, neither of these arguments is persuasive.

With respect to Smith's alleged request that Tunick file a direct appeal, at the evidentiary hearing, Tunick testified that he did not recall Smith asking him to file a notice of appeal, and that it was his normal practice to file a notice of appeal when any client asked him to do so. Tunick did, however, recall negotiating the plea with the government. Specifically, he remembered that he thought that the plea agreement was beneficial for Smith because it would prevent him from being sentenced as a career offender, and the government had agreed to recommend the low end of the Guidelines range and to withdraw a previously filed request for a sentencing enhancement which would have given Smith a minimum 240 month sentence. Tunick also recalled that Smith had agreed to waive his right to appeal with the exception of involuntariness or ineffective assistance in connection with the negotiation of the plea agreement.

According to Smith, the fact that Tunick remembered the details of the plea but did not recall the conversation where Smith allegedly told Tunick to file a notice of appeal is suspicious and shows that Tunick is exhibiting selective memory. The fact that Tunick did not recall Smith's alleged request could, however, merely be consistent with the fact that Smith never made such a request. This conclusion is supported by the remainder of the record and the court's assessment of Tunick and Smith's credibility.

Smith testified that he did not recall discussing the waiver of appeal with Tunick when he and Tunick discussed the plea agreement. He also stated that he had reviewed a draft of the plea agreement and had not read the final version. According to Smith, he did not see ¶ 5, which contained a description of the factual basis underlying his plea, or ¶ 11, which contained the waiver of his appellate rights. During the change of plea hearing, however, the Assistant U.S. Attorney read ¶ 5 to Smith and Smith stated that he agreed with the essence of the government's version of the offense. Smith also stated the basic facts in his own words. Moreover, Smith and the court engaged in an extended colloquy regarding the content and effect of the waiver and Smith told the court that he understood the scope of the waiver.[1]

The court has reviewed the transcript of Smith's plea, and finds that Smith understood and agreed to the facts set forth in ¶ 5. The court further finds that he understood the scope of

---

[1] The only thing that Smith seems to have potentially misunderstood is the fact that cocaine base is the same thing as crack. *See, e.g., U.S. v. Lee*, 413 F.3d 622, 623 (7th Cir. 2005). Smith appears to be dissatisfied with the language Tunick wrote into the plea agreement to the effect that the waiver would be invalid if there was a legislative change in the sentencing guidelines pertaining to cocaine base. Given that the language in the agreement had the meaning that Smith in fact wanted and had agreed to (*e.g.,* that the waiver would be invalid if there was a legislative change in the sentencing guidelines pertaining to crack, which is the same thing as cocaine base), this potential misunderstanding is a non-starter because it is not an actual misunderstanding.

the waiver in ¶ 11 of the plea agreement and knowingly agreed to that waiver. Smith's apparent change of heart today is not enough to allow him to go back and rewrite history: regardless of his present views regarding the wisdom of entering into the plea agreement and agreeing to the appellate waiver, he understood and agreed to the agreement and waiver when he pleaded guilty.[2]

This brings the court to Smith's alleged request that Tunick file a notice of appeal. As discussed above, during and immediately after the sentencing, Smith understood the scope of the appellate waiver in the plea agreement. Moreover, the issues that he now says he wanted to appeal – the sentencing disparity between powder and crack cocaine, the applicability of the Guidelines, and the length of his sentence – were all clearly within the scope of the waiver. In addition, there is no reason why Tunick would not have filed a notice of appeal if Smith had asked him to do so. In light of these facts, and after assessing the credibility of both Tunick and Smith, the court finds that Smith did not instruct Tunick to file a direct appeal immediately after the court imposed sentence.

This conclusion is not affected by Smith's March 23, 2004, letter, in which Smith asked Tunick about the status of his direct appeal. The fact that Smith wrote this letter is entirely consistent with his present change of heart, and does not mandate the conclusion that Smith had

---

[2] The court feels compelled to note that Smith's present change of heart is at odds with the facts of this case. When Smith pleaded guilty, he told the court that he routinely purchased powder and crack cocaine from his co-defendants pursuant to a prior agreement and then resold them. He also agreed with the government's statement that he bought and sold more than 500 grams but less than one kilogram of crack cocaine and the same amount of powder cocaine during the course of the conspiracy. In light of these facts – which Smith does not and cannot contest given his statements at the plea hearing – and Smith's criminal history category, the plea agreement made the best of a bad situation in that Smith received a far more favorable sentence than he could have otherwise received.

previously instructed Tunick to file a direct appeal and thus was writing to inquire about the status of his appeal.

In the interests of completeness, the court also acknowledges that Smith appears to be claiming that Tunick rendered constitutionally ineffective assistance because when Tunick and Smith talked about the plea agreement, Tunick did not tell Smith that the Guidelines were unconstitutional under *Apprendi*. The court believes that Smith is confusing *Apprendi* with another Supreme Court case. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The rule set forth in *Apprendi* cannot possibly help Smith given the facts of this case.

Smith, instead, appears to be arguing that his counsel was ineffective for failing to advise him that the Guidelines were advisory under *United States v. Booker*, — U.S. —, 125 S.Ct. 738 (2005). Smith was sentenced in 2003, several years before *Booker*'s issuance. An attorney who did not presage the rule in *Booker* is not ineffective. *Diaz v. U.S.*, — F.Supp.2d —, No. 05 C 928, 2005 WL 1691721 *1 (N.D. Ill. Jul. 18, 2005) (failure to raise a *Booker* argument did not establish that counsel was ineffective as such an argument could "not have succeeded on direct appeal, as the decision had not yet been handed down").

In other words, Smith's *Booker* claim fails based on "the timing of [Smith's] judgment [in entering into the plea agreement], not a potential failing of his counsel." *See id*. To the extent that Smith is attempting to raise a *Booker* claim in his § 2255 motion, any such claim must fail as *Booker* does not apply retroactively to cases on collateral review. *U.S. v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005) ("Had the judgments become final before the Supreme Court decided *Booker*, the defendants would be out of luck, because Booker is not retroactive").

**Conclusion**

For the foregoing reasons, the court denies Smith's § 2255 motion [1-1]. The clerk is directed to terminate this case and to enter a Rule 58 judgment.

DATE: August 22, 2005

_____
Blanche M. Manning
United States District Judge